50 F.3d 1088
 148 L.R.R.M. (BNA) 2961, 311 U.S.App.D.C.
136, 63 USLW 2688,
130 Lab.Cas. P 11,305
 INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE
WORKERS, DISTRICT LODGE 64, AFL-CIO, AND ITS LOCAL
LODGES 883, 1088 AND 1142, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
Brown & Sharpe Manufacturing Company, Intervenor.
 No. 93-1767.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Jan. 12, 1995.
Decided April 7, 1995.
 
 On Petition for Review of an Order of the National Labor Relations Board.
 Marc B. Gursky, argued the cause, for petitioner. With him, on the briefs, was Mark D. Schneider.
 Frederick C. Havard, N.L.R.B., argued the cause, for respondent. With him on the brief, were Linda R. Sher, Acting Associate Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, and Richard A. Cohen, Atty., N.L.R.B.
 Thomas C. Keeney, argued the cause, for intervenor. With him, on the brief, was William R. Powers, III.
 Before: EDWARDS, Chief Judge, BUCKLEY and TATEL, Circuit Judges.
 HARRY T. EDWARDS, Chief Judge:
 
 
 1
 At issue in this case is the standard by which the National Labor Relations Board ("NLRB" or "Board") determines whether a previously dismissed unfair labor practice charge may be reinstated based on fraudulently concealed evidence discovered after the six-month limitations period has run under the National Labor Relations Act ("NLRA" or "Act"). We first addressed this case in District Lodge 64, Int'l Ass'n of Machinists & Aerospace Workers v. NLRB, 949 F.2d 441 (D.C.Cir.1991). There, we upheld the Board's rule, first articulated in Ducane Heating Corp., 273 N.L.R.B. 1389, 1390, 1985 WL 45966 (1985), enforced without opinion, 785 F.2d 304 (4th Cir.1986), that "a dismissed charge may not be reinstated [by the Board's General Counsel] outside the 6-month limitations period of Section 10(b) absent special circumstances in which a respondent fraudulently conceals the operative facts underlying the alleged violation." We also upheld the Board's retroactive application of the Ducane rule to this case. District Lodge 64, 949 F.2d at 446-49. However, because we concluded that the Board failed to explain the "operative facts" standard under the Ducane rule, we remanded the case to the Board "for resolution of the fraudulent concealment issue." Id. at 449-50.
 
 
 2
 On remand, the Board abandoned the "operative facts" standard and ruled instead that allegedly concealed evidence must constitute "material facts" in order to toll the section 10(b) limitations period. Brown & Sharpe Mfg. Co., 312 N.L.R.B. 444, 445, 1993 WL 382495 (1993) ("Brown & Sharpe II") (quoting Fitzgerald v. Seamans, 553 F.2d 220, 228 (D.C.Cir.1977)). On the record before it, the Board held that evidence discovered by petitioner, District Lodge 64 of the International Association of Machinists and Aerospace Workers, AFL-CIO, and its Local Lodges 883, 1088, and 1142 (collectively "Union"), following dismissal of its unfair labor practice charges against Brown & Sharpe Manufacturing Company ("Brown & Sharpe" or "Company") was insufficient to toll the section 10(b) limitations period, because that evidence, whether or not fraudulently concealed by the Company, did not constitute "material facts." Id., 312 N.L.R.B. at 446. Because we find that the Board has failed to articulate an intelligible standard, and because the result reached by the Board reflects a miscomprehension of the purpose of "tolling" a limitations period, we grant the Union's petition for review and remand this case to the Board for further proceedings consistent with this opinion.
 
 I. BACKGROUND
 A. Factual Background
 
 3
 Underlying this case is a dispute over whether Brown & Sharpe engaged in bad-faith bargaining with the Union during prolonged contract negotiations preceding a strike that began on October 18, 1981. At the time of these negotiations, the Union represented about 1600 workers at Brown & Sharpe's facility in Kingstown, R.I. Bargaining between the parties began on September 4, 1981, but failed to yield agreement on two key issues: (1) the prevailing practice of "job preference" or "machine seniority," under which employees could exercise their seniority to obtain an assignment to a specific job or machine in their group; and (2) "mandatory transfers," a provision in the previous collective bargaining agreement prohibiting the Company from transferring employees without their consent.
 
 
 4
 After the employees went on strike on October 18, the Union filed timely unfair labor practice charges on November 5, 1981, and on March 18, 1982, alleging that Brown & Sharpe had failed to bargain in good faith in violation of sections 8(a)(1) and 8(a)(5) of the NLRA, 29 U.S.C. Secs. 158(a)(1), 158(a)(5) (1988). The General Counsel subsequently dismissed all charges. On July 30, 1982, after final dismissal of the charges, the Union learned that David Waterman, the former Director of Industrial Relations at Brown & Sharpe, had sued the Company for wrongful discharge, claiming that he had been fired for refusing to commit unfair labor practices. Relying mainly on Waterman's allegations, the Union filed another charge on September 29, 1982, alleging that the Company had fired Waterman for refusing to pursue unlawful "surface bargaining," thus showing that the Company had never intended to bargain in good faith with the Union.
 
 
 5
 During investigation of the Union's charge concerning Waterman, the General Counsel learned of position papers that had been prepared for the Company's steering committee, a group that was created before contract negotiations began to assist in the formulation of the Company's bargaining strategy. The discovered position papers, as well as the minutes of steering committee meetings, revealed the thinking of certain Company officials with respect to potential contract proposals, including proposals relating to the two issues on which the parties had failed to reach agreement during negotiations. The papers and minutes allegedly bolstered the Union's surface bargaining theory by showing that the Company viewed the job preference and mandatory transfer issues as less critical to management than the Company had represented to the Union during negotiations, during which it stated that its proposals in those areas were "absolutes" (i.e., proposals without which the Company would not agree to any new contract). Based on these newly discovered documents, the General Counsel, on September 27, 1983, reinstated the Union's previously dismissed unfair labor practice charges. On December 7, 1983, the General Counsel issued a complaint that included the allegations based on the reinstated charges.
 
 
 6
 B. The Board's Decision in Brown & Sharpe I and This Court's Decision in District Lodge 64
 
 
 7
 When hearings began in 1984, Brown & Sharpe, in addition to denying the surface bargaining charge, moved to dismiss the portion of the complaint containing the reinstated charges on the ground that they had not been reinstated until after expiration of the section 10(b) limitations period. Section 10(b) requires parties to file an unfair labor practice charge with the Board within six months of the occurrence of the alleged violation.[1] The Administrative Law Judge ("ALJ") initially ruled that he would reserve judgment on the motion until after a full evidentiary hearing on the merits. While the Company's special appeal from that ruling was pending, the Board issued its decision in Ducane, which held that "a dismissed charge may not be reinstated [by the General Counsel] outside the 6-month limitations period of Section 10(b) absent special circumstances in which a respondent fraudulently conceals the operative facts underlying the alleged violation." 273 N.L.R.B. at 1390. As a result, the Board remanded the case to the ALJ for reconsideration in light of Ducane and ordered the General Counsel and the Union to show cause why the Company's motion to dismiss should not be granted.
 
 
 8
 In April 1986, the ALJ held that Ducane required dismissal of the surface bargaining charges because reinstatement had occurred long after the running of section 10(b)'s six-month period. The ALJ determined that, under Ducane, the limitations period could not be tolled based simply on the belated discovery of new evidence revealing that a respondent's explanation for its allegedly unlawful activity might have been untrue; rather, the Board required a respondent to have taken some affirmative act to fraudulently conceal operative facts. The ALJ then concluded that there was no evidence of such concealment by the Company, because the General Counsel had never requested the steering committee documents during the initial investigation of the case. See Brown & Sharpe Mfg. Co., 299 N.L.R.B. 586, 593-96 (1990) ("Brown & Sharpe I ") (reprinting ALJ decision).
 
 
 9
 The Board affirmed, but found it unnecessary to determine whether the Company's failure to produce the committee documents during the General Counsel's initial investigation constituted fraudulent concealment. Id. at 590 n. 5. Instead, the Board found that, whether or not fraudulently concealed, the evidence did not constitute "operative facts" because, "even viewing the evidence in a light most favorable to the General Counsel's position, it does not support a finding that the [Company] advanced proposals as genuine absolutes when it actually did not consider the proposals to be important to its operations." Id. at 587. Thus, the Board concluded that the committee documents "do[ ] not sufficiently support the charge of [surface bargaining] so as to warrant extending the [section] 10(b) limitations period." Id. at 586.
 
 
 10
 On the Union's petition for review, this court upheld the Board's Ducane rule as well as the Board's authority to apply the rule retroactively to this case. District Lodge 64, 949 F.2d at 444-49. We concluded, however, that the Board had not sufficiently explained its "operative facts" standard so as to give adequate guidance concerning "just how significant the [allegedly concealed] facts must be" to trigger the Ducane fraudulent concealment exception. Id. at 449. We explained:
 
 
 11
 In considering federal statutes of limitations, we have said that "deliberate concealment of material facts" tolls the statute until the plaintiff discovers or with due diligence should have discovered the basis of the lawsuit. Fitzgerald v. Seamans, 553 F.2d 220, 228 (D.C.Cir.1977) (emphasis added). Of course the Board may wish to use another standard, and may well be free to do so. But it does not explicitly embrace any standard, and we find it hard to relate the Board's implicit standard to the facts.
 
 
 12
 Id. We further stated that, as a summary judgment or failure-to-state-a-claim ruling, the Board's decision appeared deficient because the Board "d[id] not seem to view the evidence in the light most favorable to the (hypothetical) non-moving party (the Union)" and because "the Board (without any apparent support) seemed to dismiss inferences that might have been significant." Id. at 450. Accordingly, we remanded the case to the Board "for resolution of the fraudulent concealment issue." Id.
 
 
 13
 C. The Board's Decision in Brown & Sharpe II
 
 
 14
 On remand, the Board adopted this court's standard for determining whether fraudulently concealed evidence warrants the tolling of a limitations period--namely, whether the concealed evidence constitutes "material facts." Brown & Sharpe II, 312 N.L.R.B. at 444 (quoting Fitzgerald, 553 F.2d at 228). The Board then explained its understanding of the term "material":
 
 
 15
 [C]oncealed evidence is "material" if it would make a critical difference between establishing a violation and not doing so. Thus, if the absence of that evidence results in the dismissal or withdrawal of the charge, the subsequent discovery of that evidence will permit the resurrection of the charge, provided that the other two elements [of fraudulent concealment] are present....
 
 Id. at 445.[2]
 
 16
 In applying this standard, the Board found that the committee documents, considered as a whole, although "relevant to the charge of surface bargaining, ... do not make a critical difference in establishing a violation ... [and] therefore do not constitute material facts." Id. at 446. Because it concluded that the newly discovered evidence did not constitute material facts, the Board refused to reach the issue of whether the Company had fraudulently concealed the committee documents. Accordingly, the Board reaffirmed its earlier dismissal of the pertinent allegations of surface bargaining as being time-barred under section 10(b). The Union now petitions for review once again.
 
 II. ANALYSIS
 A. Introduction
 
 17
 The Union contends that the NLRB in Brown & Sharpe II failed to articulate an intelligible standard by which the Board will determine whether allegedly concealed evidence is material for purposes of the Ducane rule. The Union also argues that the newly discovered evidence in this case is material under any rational construction of the term. We agree with the Union that the Board has again failed to articulate a coherent materiality standard for purposes of the Ducane rule. The Board purported to adopt this circuit's standard of materiality, but the rule applied by the Board obviously miscomprehends our case law. Under this circuit's materiality standard--the standard adopted by the Board--the newly discovered evidence in this case is material.
 
 
 18
 B. The Board's Materiality Standard and Its Application in This Case
 
 
 19
 As noted above, the Board provided the following explanation of its materiality standard:
 
 
 20
 [C]oncealed evidence is "material" if it would make a critical difference between establishing a violation and not doing so. Thus, if the absence of that evidence results in the dismissal or withdrawal of the charge, the subsequent discovery of that evidence will permit the resurrection of the charge....
 
 
 21
 Brown & Sharpe II, 312 N.L.R.B. at 445. This standard makes no sense, however, because it is internally inconsistent. The Board's initial statement of its test--that "concealed evidence is 'material' if it would make a critical difference between establishing a violation and not doing so"--simply cannot be read consistently with its second articulation of the test--that "if the absence of that evidence results in the dismissal or withdrawal of the charge, the subsequent discovery of that evidence will permit the resurrection of the charge." The first statement of the test, which essentially requires that allegedly concealed evidence, to be material, be dispositive of the unfair labor practice claim, is a much higher standard than the second articulation of the test, which appears to require only evidence sufficient to defeat a motion to dismiss the charge. These are two incompatible standards.
 
 
 22
 Even Board counsel, whose task it was to present and defend the Board's position to this court on petition for review, was unable to make sense of the Board's enunciated rule. In its brief to the court, the Board states that "[t]he question presented here is whether the committee documents that allegedly had been concealed could somehow have made a critical difference in the General Counsel's original decision to dismiss the unfair labor practice charge." Brief for the NLRB at 25-26. This restatement of the rule, however, could not possibly be the standard relied on by the Board, because it directly conflicts with the actual result reached by the Board. The General Counsel obviously thought that the newly discovered evidence made a "critical difference" in his original decision to dismiss the charge, for he sought to reinstate the charge based on that evidence. Thus, if the NLRB had actually applied the test asserted by counsel on review, it surely would have found that the newly discovered evidence was material and then moved to the question of whether the evidence was fraudulently concealed. Contrary to Board counsel's assertion, it appears that in applying its materiality "standard" to the facts of this case, the Board relied solely on the first part of its test. The Board found that, "although the [steering committee] documents may be relevant to the charge of surface bargaining, they do not make a critical difference in establishing a violation." Brown & Sharpe II, 312 N.L.R.B. at 446. Based on this finding, the Board determined that the documents "do not constitute material facts." Id.
 
 
 23
 If the Board indeed meant to require that allegedly concealed evidence must be dispositive of the unfair labor practice charge at issue, we conclude that this standard has at least two critical flaws. First, any standard requiring dispositive evidence to avoid the strictures of section 10(b) is contrary to the concept of "tolling," and is thus wrong as a matter of law. The purpose of tolling the limitations period is to allow consideration of the merits of claims that would otherwise be time-barred. See, e.g., Hohri v. United States, 782 F.2d 227, 246-53 (D.C.Cir.1986) (remanding certain claims for trial on the merits after determining that defendant United States's fraudulent concealment of facts giving rise to cause of action tolled applicable statute of limitations), vacated on other grounds, 482 U.S. 64, 107 S.Ct. 2246, 96 L.Ed.2d 51 (1987); Hobson v. Wilson, 737 F.2d 1, 32-42 (D.C.Cir.1984) (holding that certain claims were properly tried to jury because defendants' fraudulent concealment tolled applicable limitations period), cert. denied, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Thus, by requiring a complainant to show that he or she can prevail on the merits in order to allow tolling for a hearing on the merits, the Board effectively nullifies the purpose of tolling.
 
 
 24
 Second, we find that, while the Board purported to adopt this circuit's standard for materiality in fraudulent concealment cases, the test applied by the Board here is cut from whole cloth, finding no support in our cases. Normally, we would not require the Board to apply any particular standard where, as here, the Board is making policy under an ambiguous provision of the NLRA. See NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990) ("[T]he NLRB has the primary responsibility for developing and applying national labor policy."); Exxel/Atmos, Inc. v. NLRB, 28 F.3d 1243, 1249 (D.C.Cir.1994) ("It is up to the Board, not the courts, to make labor policy."). Here, however, the Board itself explicitly decided to adopt this court's standard in a particular context. In District Lodge 64, 949 F.2d at 449, we clearly stated that, while the Board on remand might consider using this circuit's standard for materiality in the fraudulent concealment context, "the Board may wish to use another standard, and may well be free to do so." Having chosen on remand to adopt our standard, see Brown & Sharpe II, 312 N.L.R.B. at 444 ("We agree with the Fitzgerald standard."), and thus having already exercised its policymaking authority, the Board was obliged to apply the applicable standard according to its terms.
 
 
 25
 The second part of the Board's standard is an accurate statement of the materiality test that they purported to adopt (but failed to apply):
 
 
 26
 [I]f the absence of [the newly discovered] evidence results in the dismissal or withdrawal of the charge, the subsequent discovery of that evidence will permit resurrection of the charge....
 
 
 27
 Id. at 445. Under this test of materiality, the standard is akin to that used when assessing pleadings on a motion to dismiss:
 
 
 28
 "We do not provide for tolling simply because a plaintiff's ability to mount a successful case has been impaired in some degree. Instead, we provide for tolling only when concealment has so impaired the plaintiff's case that he is not able to survive a threshold motion to dismiss for failure to tender a claim that would advance beyond the pleading stage."
 
 
 29
 Id. at 445 n. 25 (quoting Hohri, 782 F.2d at 249-50 n. 57).[3]
 
 
 30
 As in the context of other federal statutes of limitation, this standard adequately protects against the introduction of stale evidence and respects the policy of repose underlying section 10(b). See District Lodge 64, 949 F.2d at 445 (discussing policy of repose contemplated by section 10(b)). Under this standard, newly discovered evidence, even though material, must still have been fraudulently concealed to toll the section 10(b) limitations period under Ducane. Furthermore, the mere fact that the General Counsel decides to reinstate previously dismissed charges based on allegedly concealed evidence, as occurred in this case, is not dispositive. The threshold of materiality is not that low. Rather, it remains the province of the Board to determine whether the General Counsel's decision to reinstate the charges at issue was reasonable in light of the delineated materiality standard.
 
 
 31
 Applying this standard to the facts at hand, it is clear that the allegedly concealed evidence in this case was sufficient to survive a motion to dismiss. Thus, the General Counsel's decision to reinstate the charges was reasonable. In reaching the contrary conclusion, the Board in Brown & Sharpe II relied exclusively on its previous findings inBrown & Sharpe I, and restated the core conclusion of Brown & Sharpe I that the evidence does "not support the allegation that the [Company] engaged in surface bargaining." 312 N.L.R.B. at 446. In District Lodge 64, we rejected that conclusion, and our reasoning applies with equal force here:
 
 
 32
 [E]ven assuming the claim ultimately to be completely meritless, the Board's analysis itself points to some evidence supportive of the claim. For example, the Board notes that "the position paper on [mandatory] transfers states that managers have had very few problems with them." This statement surely gives some support to the union view that treatment of mandatory transfers as an absolute was contrived, even if, on balance, a fact finder would conclude that the higher levels of Brown & Sharpe's management acted in good faith in rejecting the position paper's recommendation. Our inference that the Board was demanding a good deal more than "support" is reinforced by its remarks that particular pieces of evidence are not "inherently contradictory," seeming to suggest that only an inexplicable contradiction would be enough, regardless of whether the company offered an explanation.
 
 
 33
 949 F.2d at 450 (citations omitted).
 
 
 34
 Thus, the allegedly concealed evidence is sufficient to overcome a motion to dismiss, because the documents contain statements that certainly support a claim of surface bargaining. This is especially true when the affidavit of David Waterman, which the Board inexplicably ignored in both Brown & Sharpe I and Brown & Sharpe II, is taken into account. Waterman's affidavit suggests that Company management may have had no intention of reaching agreement with the Union during contract negotiations, and that the machine seniority and mandatory transfer issues were created by the Company simply for purposes of forestalling agreement. See Affidavit of David Waterman, reprinted in Joint Appendix 293-311. That a fact finder might ultimately conclude that Waterman's testimony is not credible is irrelevant for purposes of a motion to dismiss, for that testimony must be viewed in the light most favorable to the General Counsel. The Board's view that, when read as a whole, the committee documents do not support the Union's claim, see Brown & Sharpe II, 312 N.L.R.B. at 446, is similarly irrelevant, because that evidence too must be read in the light most favorable to the General Counsel. In sum, because the combination of the newly discovered steering committee documents and the Waterman testimony clearly supports the Union's surface bargaining allegation, that evidence was sufficient to survive the Company's motion to dismiss and is thus material evidence for purposes of the Ducane rule.
 
 
 35
 We therefore vacate the judgment of the Board and remand the case for a determination of whether the evidence, though material, was actually fraudulently concealed by the Company. If the Board determines that the newly discovered evidence in this case was indeed fraudulently concealed, and thus that the section 10(b) limitations period is tolled, then the Board must reach the merits of the unfair labor practice charges.
 
 III. CONCLUSION
 
 36
 For the foregoing reasons, the Union's petition for review is granted and the case remanded for further proceedings consistent with this opinion
 
 
 37
 So ordered.
 
 
 
 [1]
 Section 10(b) provides in relevant part:
 "[N]o complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made...."
 29 U.S.C. Sec. 160(b).
 
 
 [2]
 The Board stated that fraudulent concealment "has three critical requirements: (1) deliberate concealment has occurred; (2) material facts were the object of the concealment; and (3) the injured party was ignorant of those facts, without any fault or want of due diligence on its part." Brown & Sharpe II, 312 N.L.R.B. at 444-45 (citing Holmberg v. Armbrecht, 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946); Fitzgerald, 553 F.2d at 228). Because the allegedly concealed evidence was held not material, the Board found it unnecessary to reach the other elements of fraudulent concealment. Id. at 445-46
 
 
 [3]
 The above-quoted statement in Hohri was an elaboration of our previous statement in Hobson, 737 F.2d at 35, that tolling is triggered by concealment of the "facts giving notice of the particular cause of action at issue."