**INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, AFL–CIO, DISTRICT LODGE 64, et al., Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**Brown & Sharpe Manufacturing Company, Intervenor.**

No. 97–1026.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 24, 1997.

Decided Dec. 12, 1997.

Marc B. Gursky, Providence, RI, argued the cause and filed the briefs for petitioners.

Frederick C. Havard, Supervisory Attorney, National Labor Relations Board, argued the cause for respondent, with whom Linda R. Sher, Associate General Counsel, South Euclid, OH, and Aileen A. Armstrong, Deputy Associate General Counsel, were on the brief.

Thomas C. Keeney, Providence, RI, argued the cause for intervenor Brown & Sharpe Manufacturing Company, with whom William R. Powers, III was on the brief.

Before: GINSBURG, ROGERS and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROGERS.

ROGERS, Circuit Judge:

The parties are before the court for the third time as a result of a labor dispute that began over sixteen years ago. In 1981, petitioners District Lodge 64 of the International Association of Machinists and Aerospace Workers, AFL–CIO, and its Local Lodges 883, 1088, and 1142 (hereinafter "IAM" or "the union") filed a series of charges with the National Labor Relations Board ("the Board") alleging bad faith bargaining by Brown & Sharpe Manufacturing Co. ("Brown & Sharpe" or "the company"). The General Counsel of the Board dismissed the charges and refused to issue an unfair labor practice complaint, but later attempted to reinstate the charges on the basis of newly discovered evidence uncovered during the investigation of a separate unfair labor practice charge filed by the union against Brown & Sharpe.

To date, this litigation has concerned only a preliminary procedural issue: whether the General Counsel's attempt to reinstate the dismissed charges was valid under the Board's precedent. In *Ducane Heating Corp.*, 273 N.L.R.B. 1389, 1985 WL 45966 (1985), the Board announced that the General Counsel could not reinstate a dismissed charge more than six months after the alleged unfair labor practice occurred "absent

special circumstances in which a respondent fraudulently conceals the operative facts underlying the alleged violation." *Id.* at 1390. After one decision by an administrative law judge ("ALJ"), two by the court, and three by the Board, it is settled that the evidence belatedly discovered by the General Counsel was material; the issue now is whether Brown & Sharpe fraudulently concealed that evidence. The Board ruled that the company did not engage in fraudulent concealment, and hence that the General Counsel could not reinstate IAM's dismissed charges. We deny the petition for review.

## I.

IAM's charges centered around the assertion that Brown & Sharpe engaged in illegal "surface bargaining." *See International Ass'n of Machinists & Aerospace Workers v. NLRB,* 50 F.3d 1088, 1090 (D.C.Cir.1995). Specifically, IAM claimed and continues to claim that the company had no good faith intention of reaching agreement with the union in a contract negotiation that began on September 4, 1981. In that negotiation, Brown & Sharpe insisted that its positions on two issues—"job preference" (also known as "machine seniority") and "mandatory transfers"—were "absolutes," not open to modification. IAM sought a hearing before the Board to show that Brown & Sharpe's refusal to compromise on these issues was based not on any legitimate business reason, but rather on the company's improper desire to manufacture a bargaining impasse.

Whatever the company's intent, in fact, the sides could not reach agreement on these two key issues and others, and on October 18, 1981, the members of IAM went on strike. Shortly thereafter, on November 5, 1981, and March 18, 1982, IAM filed timely unfair labor practice charges against Brown & Sharpe for bargaining with no good faith intention of trying to reach agreement, in violation of sections 8(a)(1) and 8(a)(5) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 158(a)(1), (5) (1988). *See Int'l Ass'n of Machinists,* 50 F.3d at 1090. Brown & Sharpe appeared to cooperate fully with the General Counsel's subsequent investigation of the matter. In a meeting with an investigator from the General Counsel's office, representatives of Brown & Sharpe explained the nature of the company's "absolutes," and, at the request of the investigator, provided certain documents: notes taken during negotiating sessions, correspondence between the parties, and the various proposals made. The investigator had also been previously informed by the union about the existence of a steering committee that oversaw Brown & Sharpe's bargaining strategy. In an omission that would prove crucial, however, he did not ask Brown & Sharpe's representatives about the steering committee or request documents it had produced. Thereafter, the General Counsel dismissed IAM's charges and declined to issue a complaint. Without such a complaint, of course, the Board would not hold a hearing on IAM's charges. *See* 29 U.S.C. § 160(b) (1988).

Seven months later, on July 30, 1982, a former manager of Brown & Sharpe sued the company for wrongful discharge, claiming that he had been fired for his refusal to engage in surface bargaining. *See Int'l Ass'n of Machinists,* 50 F.3d at 1090. As a result, IAM filed a new unfair labor practice charge, and the General Counsel subsequently learned of new evidence that appeared to bolster the union's earlier claims of surface bargaining. This evidence consisted of documents produced by Brown & Sharpe's steering committee that implied that the company's positions on job preference and mandatory transfer may not have been as absolute as Brown & Sharpe had represented them to be during negotiations. *See id.* at 1091. In light of the new evidence, the General Counsel reinstated the previously dismissed unfair labor practice charges and issued an unfair labor practice complaint that included these charges. *See id.*

Brown & Sharpe denied the charge of surface bargaining and also claimed that the General Counsel's complaint included dismissed claims improperly reinstated after a time bar came into effect. Section 10(b) of the Act provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." 29 U.S.C. § 160(b). As a corollary, the *Ducane* rule forbids the General Counsel from rein-

stating dismissed charges once those six months have passed, even if the charges were timely when filed, absent fraudulent concealment of evidence by the charged party. *See Ducane Heating Corp.,* 273 N.L.R.B. at 1390. Applying *Ducane,* an ALJ found that Brown & Sharpe had not fraudulently concealed the steering committee documents that led the General Counsel to reinstate the dismissed charges, and therefore ruled that those portions of the complaint based on the reinstated charges were invalid.

The Board affirmed the ALJ's decision, but on a different ground. The Board found that regardless of whether Brown & Sharpe had fraudulently concealed the steering committee documents, this evidence did not constitute "operative facts" relevant to the violation and consequently would not support reinstatement of the charges under the *Ducane* rule. *See Brown & Sharpe Mfg. Co.,* 299 N.L.R.B. 586, 586–87 (1990). On review, the court upheld the *Ducane* rule, and its retroactive application, but remanded the case to the Board for further explanation of the standard by which to determine whether the evidence constituted "operative facts." *See District Lodge 64, International Ass'n of Machinists v. NLRB,* 949 F.2d 441, 445–46, 449–50 (D.C.Cir.1991).

On remand, the Board withdrew its use of the term "operative facts" and purported instead to apply the standard of "material facts" from this court's opinion in *Fitzgerald v. Seamans,* 553 F.2d 220 (D.C.Cir.1977). *See id.* at 228; *Brown & Sharpe Mfg. Co.,* 312 N.L.R.B. 444, 444, 1993 WL 382495 (1993). Stating that it did "not necessarily adopt all the glosses on the fraudulent concealment doctrine set forth by various Federal courts," the Board reserved the opportunity to diverge from this court's precedents in the future. *Id.* at 444 n. 5. But in explaining why the evidence in the instant case did not satisfy the *Fitzgerald* standard of materiality, the Board reasoned that:

> concealed evidence is "material" if it would make a critical difference between establishing a violation and not doing so. Thus, if the absence of that evidence results in the dismissal or withdrawal of the charge, the subsequent discovery of that evidence will permit the resurrection of the charge....

*Id.* at 445. On review of the Board's second order, the court rejected this purported application of circuit law on the ground that the Board's explanation of the standard was internally inconsistent: the first sentence requires a "critical difference," yet the second states that a lesser showing would be sufficient. *See International Ass'n of Machinists,* 50 F.3d at 1093. The court, viewing the second definition within this passage to be an accurate statement of the materiality test, held that because the steering committee documents could reasonably have prevented dismissal of IAM's charges by the General Counsel, the evidence was material. *See id.* at 1094–95. The court then remanded the case to the Board for a determination of whether in fact Brown & Sharpe had fraudulently concealed the evidence. *See id.* at 1095.

In the order on review, the Board reaffirmed the ALJ's decision that the General Counsel's reinstatement of the dismissed charges was improper. This time, the Board joined the ALJ in finding that there was no fraudulent concealment. Again purporting to apply this circuit's precedents, the Board ruled that no finding of fraudulent concealment was possible without a showing of an affirmative act of concealment by Brown & Sharpe. *See Brown & Sharpe Mfg. Co.,* 321 N.L.R.B. 924, 924, 1996 WL 473365 (1996). Neither the company's professions of innocence nor its partial cooperation with the investigation constituted an affirmative act of concealment, and although Brown & Sharpe could have divulged the existence of the steering committee documents without a specific request by the General Counsel investigator, it was under no duty to do so. *See id.* at 924–25. Thus, the *Ducane* rule barred reinstatement of the dismissed charges and those portions of the unfair labor practice complaint were invalid. *See id.*

## II.

IAM petitions for review of the Board's decision that there was no fraudulent concealment. The court will set aside the Board's decisions when they are arbitrary or they otherwise err in applying established law to the facts. *See Allegheny Ludlum*

*Corp. v. NLRB,* 104 F.3d 1354, 1358 (D.C.Cir.1997). The Board's findings of fact are final if supported by substantial evidence in the record considered as a whole. *See* 29 U.S.C. § 160(e) (1988). Also, the court will uphold the Board's interpretation of the Act if it is an "acceptable reading of the statutory language and a reasonable implementation of the purposes of the relevant statutory sections." *NLRB v. International Ass'n of Bridge, Structural & Ornamental Iron Workers,* 434 U.S. 335, 341, 98 S.Ct. 651, 655–56, 54 L.Ed.2d 586 (1978); *see also Inland Lakes Management, Inc. v. NLRB,* 987 F.2d 799, 805 (D.C.Cir.1993).

■■■ In choosing a standard for determining what is necessary to show fraudulent concealment, and thus for application of the tolling exception to the *Ducane* rule, the Board chose to adopt this court's precedent. Specifically, the Board adopted the three-pronged test established in *Fitzgerald.* Under that test, fraudulent concealment tolls a statute of limitations when (1) there has been "deliberate concealment" of (2) "material facts" relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through "reasonable diligence." *Fitzgerald,* 553 F.2d at 228. IAM's difficulty centers on the first prong of the test: without showing that Brown & Sharpe concealed any evidence, IAM cannot invoke this equitable doctrine. The Board ruled that in order to show fraudulent concealment, IAM had to show an affirmative act of concealment. *See Brown & Sharpe Mfg. Co.,* 321 N.L.R.B. at 924 (citing *Richards v. Mileski,* 662 F.2d 65, 70 (D.C.Cir.1981)). While not contending that the Board adopted an erroneous legal standard for fraudulent concealment, IAM maintains that the Board misconstrued and misapplied this court's precedent when it found that Brown & Sharpe had not fraudulently concealed the steering committee documents.

We find no basis to overturn the Board's legal decision that an affirmative act of concealment was necessary to trigger the exception in the *Ducane* rule. Nor do we find any basis on which to overturn the Board's factual determination in applying this rule that there was no such act.

Although IAM contends that Brown & Sharpe deliberately misled the investigator into believing that the company had given full cooperation, IAM can identify no instances in which Brown & Sharpe affirmatively lied, nor do any such instances appear in the record. The crux of IAM's argument is that merely by cooperating with the General Counsel's investigation without divulging all of the information it knew to be relevant, Brown & Sharpe performed an affirmative act of concealment.[1] The Board ruled otherwise, finding that Brown & Sharpe did not intend its participation as a ruse to prevent the Board from finding the steering committee position papers and noting that the ALJ had found that "important questions were never asked and pertinent information was never demanded," and, further, that when asked for the papers during a subsequent investigation, the company had promptly turned them over. *Brown & Sharpe Mfg. Co.,* 321 N.L.R.B. at 924. This factual determination is final if supported by substantial evidence in the record, *see* 29 U.S.C. § 160(e), notwithstanding other possible interpretations of the evidence. *See Secretary of Labor, Mine Safety & Health Admin. v. Federal Mine Safety & Health Review Comm'n,* 111 F.3d 913, 918 (D.C.Cir.1997). There is little question that it has such support. Most telling is the fact that if Brown & Sharpe had intended its participation as a ruse to distract the investigator from the steering committee documents, it seems doubtful that it would have acknowledged the existence of the steering committee at all.

---

1. In dissent, Chairman Gould took the position that no cooperation at all would be better than partial cooperation for the purposes of investigation. *See Brown & Sharpe Mfg. Co.,* 321 N.L.R.B. at 925 (Gould, C., dissenting). In his view, by agreeing to cooperate, the company was obligated to be forthcoming; therefore, once the General Counsel asked about the concept of "absolutes," the company was on notice that the steering committee minutes were material and its partial cooperation with the investigator lulled the General Counsel into believing that no material evidence was being withheld. *See id.* at 925–26. The problem here is not one of partial cooperation, but the investigator's failure to ask the company either for details about the steering committee or for a blanket disclosure of all documents relating to the preparation of Brown & Sharpe's collective bargaining proposals.

IAM mentions one other possible affirmative act of concealment by Brown & Sharpe: even if Brown & Sharpe did not intend its participation in the investigation to mislead the Board, if in the course of that investigation Brown & Sharpe affirmatively went out of its way to express the firmness of its "absolutes," that potentially could constitute fraudulent concealment. Here, IAM focuses on the testimony of the General Counsel's investigator that in view of the company's firm position on the "absolutes," he believed that management had been virtually unanimous in its position, but that after reading the steering committee minutes indicating dissension among management, he thought that there had been "a form of concealment" by the company. There was substantial evidence in the record to support the Board's finding that Brown & Sharpe did not go out of its way to mask the dissension, however. Indeed, the General Counsel's investigator testified that it was not his usual practice to ask companies for documents showing how they arrived at their bargaining positions.[2]

For these reasons, we conclude that the Board's factual determination that there was no affirmative act of fraudulent concealment by the company is as unassailable as its legal determination that there had to be such an act to support reinstatement of the dismissed charges under the *Ducane* rule. At the same time, we acknowledge that fault for the delay in discovering the steering committee documents seems to lie not with the union, which had told the investigator about the existence of the steering committee, but with the General Counsel's office. Its investigator could have asked the company for the steering committee documents, as both the Board and the ALJ noted. Yet it is the union that must bear the brunt of this failure, and of any unfair labor practice that the company may have committed but cannot be proven. However, as the court observed in reviewing the Board's first order, the consequence of a statutory scheme that empowers only the General Counsel to issue complaints is that

some party must bear the risk of negligence on the part of the General Counsel's office: "Investigative foul-ups by the General Counsel necessarily burden one party or another (the charging party under *Ducane*, the charged party under its opposite); neither inequity is necessarily greater than the other, and it is within the Board's discretion to strike the balance as it has." *District Lodge 64*, 949 F.2d at 449. Accordingly, we deny the petition for review.

---

**2.** Although IAM contends that under *Hobson v. Wilson*, 737 F.2d 1 (D.C.Cir.1984), Brown & Sharpe's behavior may have constituted fraudulent concealment because it entailed "some minimum of culpability—if not affirmative concealment, then at least the construction of a scheme which is by its nature unknowable," *id.* at 34

(quoting *Long v. Abbott Mortgage Corp.*, 459 F.Supp. 108, 118 n. 7 (D.Conn.1978)) (internal quotation marks omitted), this argument was not presented to the Board and we therefore decline to consider it. *See Busse Broad. Corp. v. FCC*, 87 F.3d 1456, 1458, 1461–62 (D.C.Cir.1996).