United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Argued October 24, 1997 Decided December 12, 1997 

 No. 97-1026

 International Association of Machinists & Aerospace

 Workers, AFL-CIO, District Lodge 64, et al., 

 Petitioners

 v.

 National Labor Relations Board, 

 Respondent

 Brown & Sharpe Manufacturing Company, 

 Intervenor

 On Petition for Review of an Order of the 

 National Labor Relations Board

 Marc B. Gursky argued the cause and filed the briefs for 
petitioners.


 Frederick C. Havard, Supervisory Attorney, National La-
bor Relations Board, argued the cause for respondent, with 
whom Linda R. Sher, Associate General Counsel, and Aileen 
A. Armstrong, Deputy Associate General Counsel, were on 
the brief.

 Thomas C. Keeney argued the cause for intervenor Brown 
& Sharpe Manufacturing Company, with whom William R. 
Powers, III was on the brief.

 Before: Ginsburg, Rogers and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Rogers.

 Rogers, Circuit Judge: The parties are before the court for 
the third time as a result of a labor dispute that began over 
sixteen years ago. In 1981, petitioners District Lodge 64 of 
the International Association of Machinists and Aerospace 
Workers, AFL-CIO, and its Local Lodges 883, 1088, and 1142 
(hereinafter "IAM" or "the union") filed a series of charges 
with the National Labor Relations Board ("the Board") alleg-
ing bad faith bargaining by Brown & Sharpe Manufacturing 
Co. ("Brown & Sharpe" or "the company"). The General 
Counsel of the Board dismissed the charges and refused to 
issue an unfair labor practice complaint, but later attempted 
to reinstate the charges on the basis of newly discovered 
evidence uncovered during the investigation of a separate 
unfair labor practice charge filed by the union against Brown 
& Sharpe.

 To date, this litigation has concerned only a preliminary 
procedural issue: whether the General Counsel's attempt to 
reinstate the dismissed charges was valid under the Board's 
precedent. In Ducane Heating Corp., 273 N.L.R.B. 1389 
(1985), the Board announced that the General Counsel could 
not reinstate a dismissed charge more than six months after 
the alleged unfair labor practice occurred "absent special 
circumstances in which a respondent fraudulently conceals 
the operative facts underlying the alleged violation." Id. at 
1390. After one decision by an administrative law judge 
("ALJ"), two by the court, and three by the Board, it is 
settled that the evidence belatedly discovered by the General 


Counsel was material; the issue now is whether Brown & 
Sharpe fraudulently concealed that evidence. The Board 
ruled that the company did not engage in fraudulent conceal-
ment, and hence that the General Counsel could not reinstate 
IAM's dismissed charges. We deny the petition for review.

 I.

 IAM's charges centered around the assertion that Brown & 
Sharpe engaged in illegal "surface bargaining." See Interna-
tional Ass'n of Machinists & Aerospace Workers v. NLRB, 
50 F.3d 1088, 1090 (D.C. Cir. 1995). Specifically, IAM 
claimed and continues to claim that the company had no good 
faith intention of reaching agreement with the union in a 
contract negotiation that began on September 4, 1981. In 
that negotiation, Brown & Sharpe insisted that its positions 
on two issues--"job preference" (also known as "machine 
seniority") and "mandatory transfers"--were "absolutes," not 
open to modification. IAM sought a hearing before the 
Board to show that Brown & Sharpe's refusal to compromise 
on these issues was based not on any legitimate business 
reason, but rather on the company's improper desire to 
manufacture a bargaining impasse.

 Whatever the company's intent, in fact, the sides could not 
reach agreement on these two key issues and others, and on 
October 18, 1981, the members of IAM went on strike. 
Shortly thereafter, on November 5, 1981, and March 18, 1982, 
IAM filed timely unfair labor practice charges against Brown 
& Sharpe for bargaining with no good faith intention of trying 
to reach agreement, in violation of sections 8(a)(1) and 8(a)(5) 
of the National Labor Relations Act ("the Act"), 29 U.S.C. 
s 158(a)(1), (5) (1988). See Int'l Ass'n of Machinists, 50 F.3d 
at 1090. Brown & Sharpe appeared to cooperate fully with 
the General Counsel's subsequent investigation of the matter. 
In a meeting with an investigator from the General Counsel's 
office, representatives of Brown & Sharpe explained the 
nature of the company's "absolutes," and, at the request of 
the investigator, provided certain documents: notes taken 
during negotiating sessions, correspondence between the par-


ties, and the various proposals made. The investigator had 
also been previously informed by the union about the exis-
tence of a steering committee that oversaw Brown & Sharpe's 
bargaining strategy. In an omission that would prove crucial, 
however, he did not ask Brown & Sharpe's representatives 
about the steering committee or request documents it had 
produced. Thereafter, the General Counsel dismissed IAM's 
charges and declined to issue a complaint. Without such a 
complaint, of course, the Board would not hold a hearing on 
IAM's charges. See 29 U.S.C. s 160(b) (1988).

 Seven months later, on July 30, 1982, a former manager of 
Brown & Sharpe sued the company for wrongful discharge, 
claiming that he had been fired for his refusal to engage in 
surface bargaining. See Int'l Ass'n of Machinists, 50 F.3d at 
1090. As a result, IAM filed a new unfair labor practice 
charge, and the General Counsel subsequently learned of new 
evidence that appeared to bolster the union's earlier claims of 
surface bargaining. This evidence consisted of documents 
produced by Brown & Sharpe's steering committee that 
implied that the company's positions on job preference and 
mandatory transfer may not have been as absolute as Brown 
& Sharpe had represented them to be during negotiations. 
See id. at 1091. In light of the new evidence, the General 
Counsel reinstated the previously dismissed unfair labor prac-
tice charges and issued an unfair labor practice complaint 
that included these charges. See id.

 Brown & Sharpe denied the charge of surface bargaining 
and also claimed that the General Counsel's complaint includ-
ed dismissed claims improperly reinstated after a time bar 
came into effect. Section 10(b) of the Act provides that "no 
complaint shall issue based upon any unfair labor practice 
occurring more than six months prior to the filing of the 
charge with the Board." 29 U.S.C. s 160(b). As a corollary, 
the Ducane rule forbids the General Counsel from reinstating 
dismissed charges once those six months have passed, even if 
the charges were timely when filed, absent fraudulent con-
cealment of evidence by the charged party. See Ducane 
Heating Corp., 273 N.L.R.B. at 1390. Applying Ducane, an 
ALJ found that Brown & Sharpe had not fraudulently con-


cealed the steering committee documents that led the General 
Counsel to reinstate the dismissed charges, and therefore 
ruled that those portions of the complaint based on the 
reinstated charges were invalid.

 The Board affirmed the ALJ's decision, but on a different 
ground. The Board found that regardless of whether Brown 
& Sharpe had fraudulently concealed the steering committee 
documents, this evidence did not constitute "operative facts" 
relevant to the violation and consequently would not support 
reinstatement of the charges under the Ducane rule. See 
Brown & Sharpe Mfg. Co., 299 N.L.R.B. 586, 586-87 (1990). 
On review, the court upheld the Ducane rule, and its retroac-
tive application, but remanded the case to the Board for 
further explanation of the standard by which to determine 
whether the evidence constituted "operative facts." See Dis-
trict Lodge 64, International Ass'n of Machinists v. NLRB, 
949 F.2d 441, 445-46, 449-50 (D.C. Cir. 1991).

 On remand, the Board withdrew its use of the term "opera-
tive facts" and purported instead to apply the standard of 
"material facts" from this court's opinion in Fitzgerald v. 
Seamans, 553 F.2d 220 (D.C. Cir. 1977). See id. at 228; 
Brown & Sharpe Mfg. Co., 312 N.L.R.B. 444, 444 (1993). 
Stating that it did "not necessarily adopt all the glosses on 
the fraudulent concealment doctrine set forth by various 
Federal courts," the Board reserved the opportunity to di-
verge from this court's precedents in the future. Id. at 444 
n.5. But in explaining why the evidence in the instant case 
did not satisfy the Fitzgerald standard of materiality, the 
Board reasoned that:

 concealed evidence is "material" if it would make a 
 critical difference between establishing a violation and 
 not doing so. Thus, if the absence of that evidence 
 results in the dismissal or withdrawal of the charge, the 
 subsequent discovery of that evidence will permit the 
 resurrection of the charge....

Id. at 445. On review of the Board's second order, the court 
rejected this purported application of circuit law on the 
ground that the Board's explanation of the standard was 


internally inconsistent: the first sentence requires a "critical 
difference," yet the second states that a lesser showing would 
be sufficient. See International Ass'n of Machinists, 50 F.3d 
at 1093. The court, viewing the second definition within this 
passage to be an accurate statement of the materiality test, 
held that because the steering committee documents could 
reasonably have prevented dismissal of IAM's charges by the 
General Counsel, the evidence was material. See id. at 1094-
95. The court then remanded the case to the Board for a 
determination of whether in fact Brown & Sharpe had fraudu-
lently concealed the evidence. See id. at 1095.

 In the order on review, the Board reaffirmed the ALJ's 
decision that the General Counsel's reinstatement of the 
dismissed charges was improper. This time, the Board 
joined the ALJ in finding that there was no fraudulent 
concealment. Again purporting to apply this circuit's prece-
dents, the Board ruled that no finding of fraudulent conceal-
ment was possible without a showing of an affirmative act of 
concealment by Brown & Sharpe. See Brown & Sharpe Mfg. 
Co., 321 N.L.R.B. 924, 924 (1996). Neither the company's 
professions of innocence nor its partial cooperation with the 
investigation constituted an affirmative act of concealment, 
and although Brown & Sharpe could have divulged the exis-
tence of the steering committee documents without a specific 
request by the General Counsel investigator, it was under no 
duty to do so. See id. at 924-25. Thus, the Ducane rule 
barred reinstatement of the dismissed charges and those 
portions of the unfair labor practice complaint were invalid. 
See id.

 II.

 IAM petitions for review of the Board's decision that there 
was no fraudulent concealment. The court will set aside the 
Board's decisions when they are arbitrary or they otherwise 
err in applying established law to the facts. See Allegheny 
Ludlum Corp. v. NLRB, 104 F.3d 1354, 1358 (D.C. Cir. 1997). 
The Board's findings of fact are final if supported by substan-
tial evidence in the record considered as a whole. See 29 


U.S.C. s 160(e) (1988). Also, the court will uphold the 
Board's interpretation of the Act if it is an "acceptable 
reading of the statutory language and a reasonable implemen-
tation of the purposes of the relevant statutory sections." 
NLRB v. International Ass'n of Bridge, Structural & Orna-
mental Iron Workers, 434 U.S. 335, 341 (1978); see also 
Inland Lakes Management, Inc. v. NLRB, 987 F.2d 799, 805 
(D.C. Cir. 1993).

 In choosing a standard for determining what is necessary 
to show fraudulent concealment, and thus for application of 
the tolling exception to the Ducane rule, the Board chose to 
adopt this court's precedent. Specifically, the Board adopted 
the three-pronged test established in Fitzgerald. Under that 
test, fraudulent concealment tolls a statute of limitations 
when (1) there has been "deliberate concealment" of (2) 
"material facts" relating to the alleged wrongdoing and (3) 
the wronged party does not know of those facts and could not 
have discovered them through "reasonable diligence." Fitz-
gerald, 553 F.2d at 228. IAM's difficulty centers on the first 
prong of the test: without showing that Brown & Sharpe 
concealed any evidence, IAM cannot invoke this equitable 
doctrine. The Board ruled that in order to show fraudulent 
concealment, IAM had to show an affirmative act of conceal-
ment. See Brown & Sharpe Mfg. Co., 321 N.L.R.B. at 924 
(citing Richards v. Mileski, 662 F.2d 65, 70 (D.C. Cir. 1981)). 
While not contending that the Board adopted an erroneous 
legal standard for fraudulent concealment, IAM maintains 
that the Board misconstrued and misapplied this court's 
precedent when it found that Brown & Sharpe had not 
fraudulently concealed the steering committee documents. 
We find no basis to overturn the Board's legal decision that 
an affirmative act of concealment was necessary to trigger 
the exception in the Ducane rule. Nor do we find any basis 
on which to overturn the Board's factual determination in 
applying this rule that there was no such act.

 Although IAM contends that Brown & Sharpe deliberately 
misled the investigator into believing that the company had 
given full cooperation, IAM can identify no instances in which 
Brown & Sharpe affirmatively lied, nor do any such instances 


appear in the record. The crux of IAM's argument is that 
merely by cooperating with the General Counsel's investiga-
tion without divulging all of the information it knew to be 
relevant, Brown & Sharpe performed an affirmative act of 
concealment.1 The Board ruled otherwise, finding that 
Brown & Sharpe did not intend its participation as a ruse to 
prevent the Board from finding the steering committee posi-
tion papers and noting that the ALJ had found that "impor-
tant questions were never asked and pertinent information 
was never demanded," and, further, that when asked for the 
papers during a subsequent investigation, the company had 
promptly turned them over. Brown & Sharpe Mfg. Co., 321 
N.L.R.B. at 924. This factual determination is final if sup-
ported by substantial evidence in the record, see 29 U.S.C. 
s 160(e), notwithstanding other possible interpretations of the 
evidence. See Secretary of Labor, Mine Safety & Health 
Admin. v. Federal Mine Safety & Health Review Comm'n, 
111 F.3d 913, 918 (D.C. Cir. 1997). There is little question 
that it has such support. Most telling is the fact that if 
Brown & Sharpe had intended its participation as a ruse to 
distract the investigator from the steering committee docu-
ments, it seems doubtful that it would have acknowledged the 
existence of the steering committee at all.

 IAM mentions one other possible affirmative act of conceal-
ment by Brown & Sharpe: even if Brown & Sharpe did not 

__________
 1 In dissent, Chairman Gould took the position that no coopera-
tion at all would be better than partial cooperation for the purposes 
of investigation. See Brown & Sharpe Mfg. Co., 321 N.L.R.B. at 
925 (Gould, C., dissenting). In his view, by agreeing to cooperate, 
the company was obligated to be forthcoming; therefore, once the 
General Counsel asked about the concept of "absolutes," the compa-
ny was on notice that the steering committee minutes were material 
and its partial cooperation with the investigator lulled the General 
Counsel into believing that no material evidence was being with-
held. See id. at 925-26. The problem here is not one of partial 
cooperation, but the investigator's failure to ask the company either 
for details about the steering committee or for a blanket disclosure 
of all documents relating to the preparation of Brown & Sharpe's 
collective bargaining proposals.


intend its participation in the investigation to mislead the 
Board, if in the course of that investigation Brown & Sharpe 
affirmatively went out of its way to express the firmness of its 
"absolutes," that potentially could constitute fraudulent con-
cealment. Here, IAM focuses on the testimony of the Gener-
al Counsel's investigator that in view of the company's firm 
position on the "absolutes," he believed that management had 
been virtually unanimous in its position, but that after read-
ing the steering committee minutes indicating dissension 
among management, he thought that there had been "a form 
of concealment" by the company. There was substantial 
evidence in the record to support the Board's finding that 
Brown & Sharpe did not go out of its way to mask the 
dissension, however. Indeed, the General Counsel's investi-
gator testified that it was not his usual practice to ask 
companies for documents showing how they arrived at their 
bargaining positions.2

 For these reasons, we conclude that the Board's factual 
determination that there was no affirmative act of fraudulent 
concealment by the company is as unassailable as its legal 
determination that there had to be such an act to support 
reinstatement of the dismissed charges under the Ducane 
rule. At the same time, we acknowledge that fault for the 
delay in discovering the steering committee documents seems 
to lie not with the union, which had told the investigator 
about the existence of the steering committee, but with the 
General Counsel's office. Its investigator could have asked 
the company for the steering committee documents, as both 
the Board and the ALJ noted. Yet it is the union that must 

__________
 2 Although IAM contends that under Hobson v. Wilson, 737 
F.2d 1 (D.C. Cir. 1984), Brown & Sharpe's behavior may have 
constituted fraudulent concealment because it entailed "some mini-
mum of culpability--if not affirmative concealment, then at least the 
construction of a scheme which is by its nature unknowable," id. at 
34 (quoting Long v. Abbott Mortgage Corp., 459 F. Supp. 108, 118 
n.7 (D. Conn. 1978)) (internal quotation marks omitted), this argu-
ment was not presented to the Board and we therefore decline to 
consider it. See Busse Broad. Corp. v. FCC, 87 F.3d 1456, 1458, 
1461-62 (D.C. Cir. 1996).


bear the brunt of this failure, and of any unfair labor practice 
that the company may have committed but cannot be proven. 
However, as the court observed in reviewing the Board's first 
order, the consequence of a statutory scheme that empowers 
only the General Counsel to issue complaints is that some 
party must bear the risk of negligence on the part of the 
General Counsel's office: "Investigative foul-ups by the Gen-
eral Counsel necessarily burden one party or another (the 
charging party under Ducane, the charged party under its 
opposite); neither inequity is necessarily greater than the 
other, and it is within the Board's discretion to strike the 
balance as it has." District Lodge 64, 949 F.2d at 449. 
Accordingly, we deny the petition for review.